IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF ALABAMA
NORTHERN DIVISION

| | | |
|---|---|---|
| DOREN T. WATKINS, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | CASE NO. 2:18-cv-477-MHT-GMB |
| | ) | [WO] |
| ALABAMA DEPARTMENT OF | ) | |
| PUBLIC HEALTH, | ) | |
| | ) | |
| Defendant. | ) | |

**REPORT AND RECOMMENDATION OF THE MAGISTRATE JUDGE**

Pursuant to 28 U.S.C. § 636(b)(1), this case was referred to the undersigned United States Magistrate Judge for review and submission of a report with recommended findings of fact and conclusions of law. Doc. 5. On May 9, 2018, Plaintiff Doren T. Watkins filed suit against Defendant Alabama Department of Public Health ("ADPH"). Doc. 1. She asserts a Title VII retaliation claim and a hostile work environment claim. Doc. 25. Pending before the court are two motions to dismiss filed by ADPH. Docs. 20 & 26. In light of Watkins' Amended Complaint (Doc. 25), the court RECOMMENDS that the Motion to Dismiss (Doc. 20) directed to the First Amended Complaint be DENIED as moot. For the reasons that follow, the undersigned RECOMMENDS that the Motion to Dismiss (Doc. 26) directed to the Second Amended Complaint be GRANTED, and that this action be DISMISSED with prejudice.

**I. JURISDICTION AND VENUE**

The court has subject-matter jurisdiction over the claims in this lawsuit pursuant to

28 U.S.C. § 1331. The parties do not contest personal jurisdiction or venue, and the court finds adequate allegations to support both.

## II.  STANDARD OF REVIEW

In considering a motion to dismiss pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure, the court must "take the factual allegations in the complaint as true and construe them in the light most favorable to the plaintiff." *Pielage v. McConnell*, 516 F.3d 1282, 1284 (11th Cir. 2008). To survive a motion to dismiss, a complaint must include "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). A claim is "plausible on its face" if "the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). The complaint "requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Twombly*, 550 U.S. at 555. Factual allegations need not be detailed, but "must be enough to raise a right to relief above the speculative level," *Twombly*, 550 U.S. at 555, and "unadorned, the-defendant-unlawfully-harmed-me accusation[s]" will not suffice. *Iqbal*, 556 U.S. at 678.

## III.  FACTUAL BACKGROUND

The facts that follow are those alleged in the complaint. Watkins works as a registered nurse at the Montgomery County Health Department ("MCHD"). Doc. 25 at 2. On April 1, 2004, she filed a charge of discrimination with the EEOC alleging that her Title VII protections had been violated in conjunction with disciplinary incidents occurring in 2003 and 2004. Doc. 25 at 1 & 4. Her charge was unsuccessful. Doc. 25 at 3. Afterwards,

Watkins began to receive frivolous reprimands that were recorded in her personnel file. Doc. 25 at 2. She also was subjected to unfair treatment by her superiors at MCDH that her fellow nurses were not forced to endure. Doc. 25 at 2. Eventually, Watkins could no longer withstand the mistreatment, so she filed this lawsuit. Doc. 25 at 2.

One frivolous reprimand occurred on July 15, 2015, when Watkins was given a warning for failure to comply with workplace rules and for her work performance. Doc. 25 at 5. The incident involved the treatment of a local student who had Tuberculosis and required intravenous ("IV") treatment. Doc. 25 at 5. The student was not present at MCHD, but maintained a residence on the local university campus. Doc. 25 at 5. Watkins did not believe there were any work rules that would allow for or provide guidance regarding IV treatment. Doc. 25 at 5. Because she was not properly trained, and because she wanted to adhere to MCHD policies and guidelines, Watkins declined to administer the IV drugs outside of the facility as requested by the former State Nursing Director, John Hankins. Doc. 25 at 5. While Watkins recognized the need for treatment, she also thought that the treatment should come from a professional with the requisite knowledge. Doc. 25 at 5. For this decision, she was reprimanded by her supervisor Susan Douglass, by John Hankins, and by the former Nurse Manager, Alice Toles. Doc. 25 at 5.

The written reprimand reported that Watkins refused to participate in treatment of the student because she did not want to help a nurse's section that did not help hers. Doc. 25 at 5. This was false. Doc. 25 at 5. The reprimand also stated that Watkins failed to follow the "Policy and Procedures for the ADPH Staff Called to Duty in Response to Emergencies and for Receipt of Emergency Training." Doc. 25 at 6. The Emergency

3

Training Policy lays out procedures that must be followed if a natural disaster, man-made disaster, or an outbreak of an infectious disease occurs in the state. Doc. 25 at 6. After Hankins had instructed Watkins to break protocol, Watkins had called the Alabama State Board of Nursing and inquired as to what justified an "emergency." Doc. 25 at 6. She was told that for an emergency preparedness situation to exist the patient had to be infectious such that it put the public at risk. Doc. 25 at 6. The student at issue, however, was not infectious. Doc. 25 at 6. Even though Watkins informed Douglass and Toles of this guidance, they insisted on reprimanding her. Doc. 25 at 6.

Despite contesting its contents, Watkins signed the reprimand because she was informed that she would be subject to further disciplinary action if she refused to sign. Doc. 25 at 5. She then filed a grievance report on August 17, 2015, requesting that she be given adequate training to provide IV treatment. Doc. 25 at 5. She also drafted a memo to Toles, Douglass, and Debra Thrasher, her area administrator, in an attempt to record her response to the disciplinary warning. Doc. 25 at 5. Later that day, Watkins received an email from Toles taking her off the schedule to observe the student patient despite the fact that she had been disciplined earlier for failing to attend the patient observation. Doc. 25 at 5–6. Watkins believes that this response was an admission by her supervisors that she was never obligated to attend the observation, and that once they achieved the goal of adding another reprimand to her file the issue of her attending the observation was moot. Doc. 25 at 5. Ultimately, the student had to receive treatment out of state. Doc. 25 at 6. This incident was included in Watkins' Employee Performance Appraisal on November 19, 2015, and she received a rating of "Unsatisfactory" for compliance with MCHD rules as a result. Doc.

4

25 at 6.

Watkins received other frivolous reprimands on July 31, 2017 and August 1, 2017. Doc. 25 at 2. These purported infractions involved an incident that occurred on January 27, 2017. Doc. 25 at 2. Around 5:00 p.m. on January 27, Watkins was informed by another ADPH employee that she had overheard three other employees discussing how they had cheated on a nursing exam. Doc. 25 at 2. On the next day, at 8:00 a.m., Watkins informed her supervisor, Ona Abbot, of the alleged cheating. Doc. 25 at 2. Abbot initially responded that nothing could be done at the time, and informed Watkins that there was no need to come to her office. Doc. 25 at 2. However, an investigation of the cheating ensued, and it was discovered that three individuals—Suzanne Berry, Sabrina Horn, and Emilio Rodriguez—were involved. Doc. 25 at 2.

Six months after the cheating occurred, Watkins received a written reprimand for the cheating done by the three other employees. Doc. 25 at 2. Connie King, an assistant administrator, implicated Watkins in the cheating plot by falsely alleging that she was aware that the exam questions and answers were being passed around. Doc. 25 at 2. King also claimed that Watkins did not immediately inform her supervisor when she found out about the cheating. Doc. 25 at 2. Despite implicating Watkins in the cheating plot, King failed to investigate Ashley Megelin, who also had been identified as a cheater. Doc. 25 at 2. As part of the investigation, Watkins completed a follow-up interview reiterating that she was not involved with the cheating effort and had informed her supervisor as soon as she learned of the misconduct. Doc. 25 at 2.

On July 31, 2017, and August 1, 2017, Abbot and Susan Douglass informed Watkins

5

that she was being reprimanded for the cheating incident. Doc. 25 at 2. Watkins reminded Abbot and Douglass that she had no role in the misconduct, which she had promptly reported. Doc. 25 at 2. Abbot and Douglass harassed Watkins and attempted to coerce and intimidate her into signing a written reprimand. Doc. 25 at 2. Douglass repeatedly insisted that Watkins sign the reprimand, and informed Watkins that she would be reprimanded further if she did not sign. Doc. 25 at 2. The shocking and unexpected interaction caused Watkins to feel lightheaded and caused her heart rate to escalate. Doc. 25 at 3. Watkins informed Abbot and Douglass of her health concerns but they mocked her in return. Doc. 25 at 3. The two made eye contact with another and laughed. Doc. 25 at 3. In an obviously sarcastic manner, Douglass stated, "Surely we don't want your heart to race." Doc. 25 at 3. Abbot remained relatively quiet and simply stared at Watkins in an aggressive manner. Doc. 25 at 3. Watkins left the meeting extremely concerned and disoriented. Doc. 25 at 3. As she has been forced to do since filing her initial EEOC charge in 2004, Watkins braced herself for whatever was to come the next day from Abbot and Douglass. Doc. 25 at 3.

On August 2, 2017, Watkins reported Abbot and Douglass to Connie King and Rickey Elliott, Field Operation Manager. Doc. 25 at 3. Watkins informed King and Elliott that Abbot and Douglass failed to follow proper discipline protocol and that they prepared disciplinary documents which they knew to be untrue. Doc. 25 at 3. She also filed a complaint against them, requesting that she not be left alone in their presence. Doc. 25 at 3. Watkins' attempt for relief fell on deaf and biased ears, as it had in the past. Doc. 25 at 3. She expected Abbot and Douglass to receive some discipline, but instead their behavior was allowed. Doc. 25 at 3.

6

As a result of the cheating incident, Susanne Berry, who is Caucasian, was allowed to resign. Doc. 25 at 3. Emilio Rodriquez, who is Hispanic, was terminated. Doc. 25 at 3. Sabrina Horn, who is African American, and who initially resigned after her role in the cheating was discovered, was promoted. Doc. 25 at 3. Watkins believes that Horn's promotion was an implicit concession by ADPH and MCHD of their wrongdoing against Watkins and an attempt to get ahead of any race discrimination complaint that she might file. Doc. 25 at 4. That is, Watkins believes they promoted Horn in order to have a defense against any discrimination claim Watkins might bring. Doc. 25 at 4.

Watkins received an appraisal of her work on November 16, 2017. Doc. 25 at 4. King, Abbot, Douglass, and Elliott gave her the evaluation. Doc. 25 at 4. Watkins informed them that she did not agree with the information contained in the appraisal, which referenced the disciplinary infractions described above, but they instructed her that she must sign it, and she did. Doc. 25 at 4. In addition to signing, Watkins initialed the line "initial if comments attached," and notified them that she would provide an attachment to express her disagreement. Doc. 25 at 4. Watkins was never given the chance to add her statement. Doc. 25 at 4. In fact, Jeanna Sasser drew a line through her initials. Doc. 25 at 4. Watkins was informed that this was done so that the appraisal could be sent to the state personnel department in a timely manner, which would have been impossible if Watkins had been given the proper time to provide comments. Doc. 25 at 4. Watkins believes that she was presented with her appraisal at the last minute in order to prevent her from providing her viewpoint. Doc. 25 at 5.

Because Watkins has been reprimanded and has received point deductions on her

7

performance evaluations, her standing on the merit ranking system has taken a substantial hit. Doc. at 4. The baseless reprimands have affected her appraisal and have prevented her from receiving a promotion or raise in compensation. Doc. 25 at 4.

### IV.  DISCUSSION

**A.     Shotgun Pleading**

Alleging that Watkins' second amended complaint constitutes a "shotgun pleading," ADPH argues that it is impossible to decipher which facts apply to which claims. Doc. 26 at 4–5; *see McCall v. Bank of America, N.A.*, 2016 WL 5402748, at *1 (M.D. Ala. Sept. 26, 2016) ("The Eleventh Circuit has roundly condemned such shotgun pleadings, both for the confusion they cause litigants and the havoc they wreak on the docket."). Shotgun complaints include those "containing multiple counts where each count adopts the allegations of all preceding counts" and complaints that are "replete with conclusory, vague, and immaterial facts not obviously connected to any particular cause of action." *McCall*, 2016 Wl 5402748, at *1. There are aspects of Watkins' complaint that could be construed as emblematic of a shotgun pleading, but the court—mindful of Watkins' *pro se* status—has attempted to identify and address any cognizable claims. Nonetheless, for the reasons stated below, Watkins' claims are due to be dismissed.

**B.     Retaliation**

Watkins alleges that after she filed a charge with the EEOC in 2004 she received a number of retaliatory and frivolous reprimands that adversely affected her standing with respect to potential promotions. Doc. 25 at 2 & 6. ADPH counters that Watkins' retaliation claim fails because it is untimely and because no causal connection exists between the 2004

8

EEOC charge and any adverse employment action. Doc. 26 at 6. To state a claim for retaliation, a plaintiff must allege that (1) she participated in an activity protected by Title VII, (2) she suffered an adverse employment action, and (3) but-for her participation in the protected activity, she would not have suffered the adverse employment action. *See Univ. of Texas Sw. Med. Ctr. v. Nassar*, 570 U.S. 338, 362 (2013). Making a charge, testifying, assisting, or participating in any manner in an EEOC investigation, proceeding, or hearing under Title VII is protected activity. *See E.E.O.C. v. Total Sys. Servs., Inc.*, 221 F.3d 1171, 1174 (11th Cir. 2000); 42 U.S.C. § 2000(e)-3(a). A Title VII complaint "need not allege facts specific to make out a prima facie case, just enough factual matter to suggest retaliation." *Bowens-Thomas v. Ala. Coop. Ext. Sys.*, 2016 WL 8193625, at *2 (M.D. Ala. 2016) (citing *Melton v. Nat'l Dairy LLC*, 705 F. Supp. 2d 1303, 1333 (M.D. Ala. 2010)) (internal quotation marks omitted).

### 1. *Timeliness*

ADPH argues that any retaliation claim predicated on the July 2015 disciplinary incident is untimely. Doc. 26 at 12. Title VII provides that a charge of discrimination "shall be filed within one hundred and eighty days after the alleged unlawful employment practice occurred." *Nat'l R.R. Passenger Corp. v. Morgan*, 536 U.S. 101, 109 (2002) (quoting 42 U.S.C. § 2000e-5(e)(1)). "EEOC regulations interpret the relevant Title VII provisions to mean that a charge is 'filed' when the Commission receives it." *Pouyeh v. Univ. of Ala. Dep't of Ophthalmology*, 66 F. Supp. 3d 1375, 1380 (N.D. Ala. 2014); *see also* 29 C.F.R. § 1601.13(a). This requirement "erects an absolute bar on recovery for discrete discriminatory or retaliatory acts occurring outside the limitations period." *See Ledbetter*

9

*v. Goodyear Tire & Rubber Co., Inc.*, 421 F.3d 1169 (11th Cir. 2005) (internal quotations and citation omitted). Supreme Court precedent establishes that Title VII precludes recovery for acts of retaliation that occur outside the statutory time period of 180 days. *Morgan*, 536 U.S. at 105.

Watkins filed her EEOC charge on January 11, 2018. Doc. 1-1 at 2. Thus, to be within the 180-day period, any actionable acts of retaliation must have occurred after July 14, 2017. Because the July 2015 incident occurred well before July 14, 2017, any claim of retaliation regarding that specific incident is time barred.

### 2. *Causation*

Watkins alleges that she participated in an activity protected by Title VII, namely the filing of her 2004 EEOC complaint. Doc. 25 at 1. Watkins also alleges that she suffered an adverse employment action because the baseless reprimands she received would have been considered by decision makers who determined promotions and raises. Doc. 25 at 6. However, she fails to allege but-for causation.

"Title VII retaliation claims require proof that the desire to retaliate was the but-for cause of the challenged employment action." *Nassar*, 570 U.S. at 352. To prove causation, "the plaintiff must generally show that the decision maker was aware of the protected conduct at the time of the adverse employment action." *Brungart v. BellSouth Telecomm., Inc.*, 231 F.3d 791, 799 (11th Cir. 2000) (internal citations omitted). In the absence of direct evidence, the burden of causation can be met by showing close temporal proximity between the statutorily protected activity and the adverse employment action. *See Brungart*, 231 F.3d at 798–99. The standard for measuring the closeness of temporal

proximity focuses on when "the decision-maker became aware of the protected conduct, and that there was close temporal proximity between the awareness and the adverse employment action." *Farley v. Nationwide Mut. Ins. Co.*, 197 F.3d 1322, 1337 (11th Cir. 1999). "But mere temporal proximity, without more, must be very close." *Thomas v. Cooper Lighting, Inc.*, 506 F.3d 1361, 1364 (11th Cir. 2007) (internal citation omitted). "A three to four month disparity between the statutorily protected expression and the adverse employment action is not enough" to establish causation. *Id.*

Here, Watkins has not pleaded any direct evidence demonstrating that those who decided against granting her a promotion or raise were aware of her 2004 EEOC charge. And she does not assert that a single decision maker at ADPH was aware that she filed a charge with the EEOC in 2004. Further, although she states that she believes that the reprimands she received were retaliatory, she does not allege that any of her reprimanding supervisors were aware of the 2004 EEOC charge. Accordingly, Watkins' complaint does not directly establish but-for causation because she fails to allege that those taking the adverse employment actions against her were aware that she participated in statutorily protected activity. *See Bowens-Thomas*, 2016 WL 8193625, at *3 (dismissing complaint that fails to allege that the decision makers for the adverse employment action were aware of plaintiff's discrimination complaints).

Watkins also cannot rely on temporal proximity as circumstantial evidence of causation. When "there is a substantial delay between the protected expression and the adverse action, the complaint of retaliation fails a matter of law." *Thomas*, 506 F.3d at 1364. The Eleventh Circuit views "a substantial delay" as a gap longer than three months.

*Brown v. Ala. Dept. of Transp.*, 597 F.3d 1160, 1182 (11th Cir. 2010). Watkins' complaint references instances of discipline occurring in 2003, 2004, 2006, 2015, and 2017. *See* Doc. 25 at 4. She pleaded that the earliest incidents were the basis of her 2004 EEOC charge. Doc. 25 at 4. To establish causation through temporal proximity, the gap between the 2004 EEOC charge and the first act of retaliation cannot be longer than approximately three months. *See Brown*, 597 F.3d at 1182 ("Even a three-month interval between the protected expression and the employment action . . . is too long."). This action involves discipline infractions occurring in 2015 and 2017, all of which happened more than a decade after the filing of the 2004 EEOC charge. Accordingly, there was a substantial delay between Watkins' protected expression and any alleged adverse employment action, so temporal proximity cannot establish but-for causation.

While a complaint need not make out a *prima facie* case of discrimination under Title VII, a plaintiff must plead enough factual matter to suggest retaliation to survive a motion to dismiss. Watkins's complaint, devoid of any allegation suggesting that the decision makers who acted adversely against were at all aware of her engagement in protected activity, fails to meet this burden.

**B.     Hostile Work Environment**

Watkins alleges that "the work environment that [she has] been forced to work under since filing [her] EEOC complaint in 2004 has become so filled by severe and pervasive discrimination as a result of retaliation directed at [her] because [she] filed the claim, that it altered the terms and conditions of [her] employment." Doc. 25 at 1. ADPH asserts that Watkins' hostile work environment claim fails because she has not sufficiently alleged

12

causation or that the harassment she suffered was severe or pervasive. Doc. 26 at 14–16. ADPH advances two arguments proposing that Watkins failed to establish causation. First, ADPH contends that Watkins failed to allege that any of the individuals who harassed her knew of her 2004 EEOC complaint. Doc. 26 at 15. Second, ADPH suggests that Watkins' misconduct, as evidence by her complaint and its attachments, severs any causal chain that might exist between the protected activity and harassment. Doc. 26 at 15. Because the court agrees with ADPH's first contention, any discussion of ADPH's remaining arguments is pretermitted.

To state a retaliatory hostile work environment claim, a plaintiff must allege that "(1) she was engaged in protected activity, (2) after doing so, she was subjected to unwelcome harassment, (3) her protected activity was a 'but for' cause of the harassment, and (4) the harassment was sufficiently severe or pervasive to alter the terms of her employment." *Baroudi v. Sec'y, U.S. Dep't of Veterans Affairs*, 616 F. App'x 899, 904 (11th Cir. 2015) (citing *Gowski v. Peake*, 682 F.3d 1299, 1311–12 (11th Cir. 2012)).

As with retaliation claims, a plaintiff asserting a retaliatory hostile work environment claim must allege that her harassers knew that she engaged in statutorily protected activity. *See Gloetzner v. Lynch*, 225 F. Supp. 3d 1329, 1368 (N.D. Fla. 2016) ("With regard to causation, the plaintiff must show that the protected activity (*e.g.* filing an EEO action) was the but-for cause of the discriminatory or retaliatory hostile work environment.") (citing *Clark v. S. Broward Hosp. Dist.*, 601 F. App'x 886, 899 (11th Cir. 2015)); *Carney v. City of Dothan*, 158 F. Supp. 3d 1263, 1288 (M.D. Ala. 2016) (finding that a plaintiff cannot establish causation without evidence that any decision makers were

13

aware of her EEOC complaints). As discussed above, Watkins does not plead that any decision makers were aware that she filed a charge with the EEOC in 2004. Accordingly, her retaliatory hostile work environment claim is due to be dismissed for lack of causation.

## V. CONCLUSION

In light of the foregoing, it is the RECOMMENDATION of the Magistrate Judge that ADPH's initial Motion to Dismiss (Doc. 20) be DENIED as moot, but that the instant Motion to Dismiss (Doc. 26) be GRANTED, and this action be DISMISSED with prejudice.

It is further ORDERED that Watkins is DIRECTED to file any objections to the report and recommendation **no later than February 5, 2019**. Any objections filed must specifically identify the findings in the Magistrate Judge's report and recommendation to which the party is objecting. Frivolous, conclusive, or general objections will not be considered by the District Court. Watkins is advised that this report and recommendation is not a final order of the court and, therefore, is not appealable.

Failure to file written objections to the proposed findings and recommendations in the Magistrate Judge's report and recommendation shall bar the party from a *de novo* determination by the District Court of issues covered in the report and recommendation and shall bar the party from attacking on appeal factual findings in the report and recommendation accepted or adopted by the District Court, except upon grounds of plain error or manifest injustice. *See Nettles v. Wainwright*, 677 F.2d 404 (5th Cir. 1982); *Stein v. Reynolds Sec., Inc.*, 667 F.2d 33 (11th Cir. 1982).

DONE this 22nd day of January, 2019.

/s/ Gray M. Borden
_____
GRAY M. BORDEN
UNITED STATES MAGISTRATE JUDGE